**AFFIRMED; Opinion Filed March 20, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-12-01079-CR

No. 05-12-01080-CR

**KEITH BRONSHA PAUL, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause Nos. F11-41122-Y, F10-42448-Y**

## MEMORANDUM OPINION

Before Justices Moseley, Francis, and Lang
Opinion by Justice Lang

Following a plea of guilty to charges of aggravated robbery with a deadly weapon and unlawful possession of a controlled substance (cocaine), appellant Keith Bronsha Paul was sentenced by the trial court to 20 years' confinement in the Texas Department of Criminal Justice Institutional Division for the aggravated robbery charge and 180 days in the Dallas County jail for the possession charge. In his sole issue on appeal, appellant asserts the trial court erred in denying his motion to suppress because officers illegally detained him prior to his vehicle being searched.

For the reasons below, we affirm the trial court's judgment.

# I. FACTUAL AND PROCEDURAL BACKGROUND

The testimony at trial shows that on December 15, 2010, two women flagged down Mesquite Police Officer Peter Velasquez, who was patrolling the area, and told him they had just been robbed at gunpoint. The women provided the officer with a description of their assailant and directed the officer to where their assailant had fled on foot. Officer Velasquez dispatched a radio call to another local police officer, Officer Stephen Killingsworth, to alert him of the robbery.

As Officer Velasquez drove east, he observed a vehicle driving and turning away from the complex. Officer Velasquez attempted to catch up with the exiting vehicle, but the vehicle appeared to "be traveling at a high rate of speed" since it had "already" reached an intersection outside of the complex. Although he did not use radar, Officer Velasquez testified the vehicle had to have been traveling "with a high amount of speed" to reach that intersection by that time.

Officer Velasquez drove an alternate route to await the vehicle at another intersection and then pulled in behind the vehicle on a service road. Officer Killingsworth caught up with the vehicles of Officer Velasquez and the suspect on this service road. Officer Velasquez confirmed the suspect's vehicle was the same one he had followed from the victims' apartment complex. Then, he turned on his overhead lights to initiate a traffic stop. The speeding vehicle turned into another apartment complex and stopped. The driver then jumped out of that vehicle and fled on foot. Officer Velasquez drove slowly past the suspect's vehicle to verify there was no one else inside. He then pursued the suspect, first in his car and then on foot.

After the suspect fled, Officer Killingsworth proceeded to secure the suspect's vehicle and noticed the suspect had left the door ajar. Looking inside the vehicle, Officer Killingsworth observed a bag of marijuana in the console, a bag of cocaine in the ashtray, and "the two purses involved in the crime scene" in the passenger seat. Prior to the car being impounded, Officer

Killingsworth performed an inventory search, at which point, the marijuana and cocaine were taken into possession.

Before pleading guilty, appellant filed a motion to suppress all evidence seized from his vehicle, arguing this evidence was seized pursuant to a warrantless search. At the hearing on the motion to suppress, Officer Velasquez testified as follows:

Q (by counsel for the State): Based on your observations and knowing what the speed limits were when you started off by saying he was going at a high rate of speed, do you believe that he was exceeding the speed limit at that time?

A: On Franklin, he would have had to have been to get that distance from me. By the time he gets right here, when I get behind him – at the time, there's construction all along this part right here, so there's no room on the south side of that line. There's a concrete barrier right there along the service road. So when he gets right there, you know, he is actually starting to – I mean, he is not driving – he is driving slower by then. It is real tight. Little one-lane deal.

The trial court denied appellant's motion and issued findings of fact and conclusions of law in both cause numbers. These findings included:

- [Officer] Velasquez drove that direction when he saw a car … leave the complex and begin to drive away at a high rate of speed. [Officer] Velasquez testified that he was sure that the car was exceeding the posted speed limit for that road.

- Due to the fact that this car was leaving the area in which the robbery had occurred and in (sic) the manner in which it was being driven, [Officer] Velasquez turned on his exterior lights in order to affect a traffic stop.

- The Court finds that the officers, who observed the [vehicle] leave the area of the robbery, exceed the speed limit or drive at a speed greater than reasonable, continue to

drive after the emergency lights were operated, and flee from the car after it stopped, had reasonable suspicion to stop and detain the driver of that vehicle, [appellant], to investigate further.

- The Court finds that any evidence gained by the officers as a result of the stop was gained as a result of a valid stop.

- The Court therefore concludes that given the totality of the circumstances, and drawing reasonable inferences from the facts corroborated by the officers, there was a reasonable suspicion to stop the [vehicle] and detain [appellant].

## II. ERROR IN DENYING MOTION TO SUPPRESS

### A. *Applicable Law and Standard of Review*

The Fourth Amendment allows "a warrantless detention of a person, short of a full-blown custodial arrest, if the detention is justified by reasonable suspicion." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013) (citing *Terry v. Ohio*, 392 U.S. 1, 28 (1968) and *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011)). Reasonable suspicion "exists if an officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* "These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime." *Id.* (citing *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011)). An officer's "hunch" is insufficient to justify a warrantless detention, although "the likelihood of criminal activity need not rise to the level required for probable cause." *Id.* at 273-74 (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)).

Determining reasonable suspicion relies on an "objective" test that "focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent." *Id.* at 274. This determination requires the court to look at the totality of the circumstances. *Id.*

A court may find reasonable suspicion even though "each fact in isolation may be insufficient." *Id.* at 275. For instance, examining a witness's statement apart from the circumstances under which it was made "deprives the statement of additional content gleaned from context and disregards an officer's ability to make rational inferences from the statement and other known facts." *Id.* at 275-76 (citing *Arvizu*, 534 U.S. at 273-74). An officer, then, is "entitled to interpret these facts with common sense and infer that criminal activity may have recently occurred". *Id.* at 276. "[R]easonable suspicion may exist even if those circumstances standing alone may be just as consistent with innocent activity as with criminal activity." *Id.* at 274. However, "[m]ere opinions are ineffective substitutes for specific, articulable facts." *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

Appellate courts use a bifurcated standard to evaluate the totality of the circumstances and determine whether reasonable suspicion exists. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013). First, the courts must give "almost total deference to a trial court's determination of the historical facts that the record supports." *Id.*; *see also Kerwick*, 393 S.W.3d at 273 ("The trial judge's determinations of historical facts and mixed questions of law and fact that rely on credibility are granted almost total deference when supported by the record."). Second, the appellate court reviews the trial court's legal ruling *de novo* "unless [the trial court's] explicit fact findings that are supported by the record are also dispositive of the legal ruling." *Abney*, 394 S.W.3d at 548. "Whether the facts known to the officer at the time of the detention amount to reasonable suspicion is a mixed question of law that is reviewed *de novo* on appeal." *Kerwick*, 393 S.W.3d at 273. The totality of the circumstances at the time of detention are

evaluated to determine whether reasonable suspicion existed to justify the detaining officer's actions. *Abney*, 394 S.W.3d at 548.

## B. Application of the Law to the Facts

Appellant asserts the trial court's findings of fact are not supported by the record and should therefore not be accorded the deference typically given the trial court's findings. Instead, appellant argues our decision should be based "solely on the record at the motion to suppress hearing." Appellant further contends Officer Velasquez did not state specific, articulable facts to establish reasonable suspicion appellant had committed a crime. Without this reasonable suspicion, appellant argues Officer Velasquez could not detain appellant for leaving the scene of the robbery and any evidence gathered during the subsequent search should have been excluded as fruit of the poisonous tree.

The State responds the trial court properly denied appellant's motion to suppress because the trial court's findings were supported by the record. Additionally, the State asserts that Officer Velasquez did provide specific, articulable facts to establish reasonable suspicion. Finally, the State argues, even if Officer Velasquez was mistaken about appellant's speed, this mistake of fact would still justify appellant's detention because Officer Velasquez's actions were "lawful under the facts as he believed them to be." *See Robinson v. State*, 377 S.W.3d 712, 720-21 (Tex. Crim. App. 2012) (arguing a "reasonable mistake about the facts may yet legitimately justify" an officer's conclusion that there is reasonable suspicion to detain a suspect).

We apply a bifurcated standard of review to evaluate the totality of the circumstances to determine whether reasonable suspicion existed. *See Abney*, 394 S.W.3d at 547. In this case, Officer Velasquez provided testimony that appellant was "traveling at a high rate of speed." Though Officer Velasquez's subjective beliefs are not relevant to the determination of reasonable suspicion, *see Kerwick*, 393 S.W.3d at 274, appellant's vehicle had "already" reached an

intersection outside of the complex. Moreover, appellant's vehicle was seen leaving in the direction identified by the victims. Though the specific, articulable facts introduced through Officer Velasquez's testimony were "neither ideally inclusive nor entirely descriptive," they were nevertheless sufficient to evaluate the reasonableness of appellant's detention. *See id.* at 275.

While an opinion alone would have been an ineffective substitute for specific, articulable facts, the State in the case before us did develop objective facts from Officer Velasquez's testimony that are reflected in the trial court's findings, including that appellant's vehicle was identified after it drove away from the victims' apartment complex - in the direction indicated by the victims - "at a high rate of speed." *See Ford*, 158 S.W.3d at 493. These findings, which mirror Officer Velasquez's testimony, indicate that the trial judge found Officer Velasquez to be credible. *See Kerwick*, 393 S.W.3d at 274. Since we conclude these findings of fact are supported by the record, we give "almost total deference to [the] trial court's determination of the historical facts." *See Abney*, 394 S.W.3d at 547.

Next, we review *de novo* whether the facts known to Officer Velasquez at the time of appellant's detention amounted to reasonable suspicion. *See Kerwick*, 393 S.W.3d at 273. We begin our review by identifying the relevant historical facts the trial judge found Officer Velasquez knew at the time he began his investigative detention: (1) He was informed by two women that they had just been the subjects of an aggravated robbery; (2) The two women pointed Officer Velasquez to the direction the suspect fled; (3) Officer Velasquez drove that direction when he saw a car leave the apartment complex and which car "beg[a]n to drive away at a high rate of speed"; (4) Due to the fact that this car was leaving the area in which a robbery had just occurred and the manner in which the car was being driven, Officer Velasquez turned on

his overhead lights to initiate a traffic stop; (5) At the next street, the driver stopped the car, immediately exited the car, and fled on foot through an apartment complex. *See id.* at 275.

The specific, articulable facts known to Officer Velasquez, including the reported robbery, showed an "unusual activity" occurred. *See id.* Moreover, there was some evidence to connect appellant to the "unusual activity," and the "unusual activity" was an indication that the unusual activity was related to crime. *See id.* at 273. These facts, "combined with rational inferences," led Officer Velasquez to reasonably conclude that appellant was or had been engaged in criminal activity. *See id.* Although each fact in isolation may have been insufficient, Officer Velasquez was entitled to "interpret these facts with common sense and infer that criminal activity may have recently occurred." *See id.* at 275-76.

Officer Velasquez's belief that appellant was involved in criminal activity is bolstered further by appellant's flight from the vehicle after the traffic stop. Although appellant's flight "is not necessarily indicative of wrongdoing, [] it is certainly suggestive of such" and can be considered in the totality of the circumstances analysis. *See id.* (quoting *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)). Consequently, since reasonable suspicion existed under the totality of the circumstances of this case, Officer Velasquez was justified in suspecting appellant had been involved in criminal activity and detaining appellant to investigate further. *See id.* at 277.

For these reasons, we conclude the trial court did not err in denying appellant's motion to suppress. Consequently, we decide against appellant on his sole issue.

## III. CONCLUSION

We decide against appellant on his sole issue and affirm the trial court's judgment.

/Douglas S. Lang/

Do Not Publish
TEX. R. APP. P. 47.2(b)

DOUGLAS S. LANG
JUSTICE

121079F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KEITH BRONSHA PAUL, Appellant

No. 05-12-01079-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas
Trial Court Cause No. F11-41122-Y.
Opinion delivered by Justice Lang.   Justices Moseley and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 20th day of March, 2014.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

KEITH BRONSHA PAUL, Appellant

No. 05-12-01080-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas
Trial Court Cause No. F10-42448-Y.
Opinion delivered by Justice Lang.   Justices Moseley and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 20th day of March, 2014.

/Douglas S. Lang/

DOUGLAS S. LANG
JUSTICE